UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DREW ATKINSON,<br><br>                    Plaintiff,<br><br>v.<br><br>LITTLEBIRD CONNECTED CARE, INC.,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [11] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00182-DBB-CMR<br><br>District Judge David Barlow |

Before the court is Defendant Littlebird Connected Care, Inc.'s ("Littlebird") Motion to Dismiss Plaintiff Drew Atkinson's Amended Complaint.[1]

## BACKGROUND

This case arises from allegations that Defendant breached two separate contractual agreements with Plaintiff by failing to provide equity options bargained for in those contracts.[2] In his Amended Complaint, Plaintiff alleges the following:

On July 15, 2024, Mr. Atkinson signed a Consulting Agreement with Defendant Littlebird.[3] The Consulting Agreement[4] lasted six months, starting on July 1, 2024, and is governed by the laws of the State of Washington pursuant to the Agreement.[5] Under the Consulting Agreement, Plaintiff was required to provide consulting services in two

---

[1] Partial Motion to Dismiss ("MTD"), ECF No. 11, filed May 14, 2026.
[2] *See* Amended Compl., ECF No. 9, filed Apr. 24, 2026.
[3] *Id.* ¶ 4.
[4] Because the Consulting Agreement and Employment Agreement are referred to in the complaint, are central to Plaintiff's claims, and are not disputed by either party, the court may consider them at the motion to dismiss stage. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).
[5] Consulting Agreement 12, 14, ECF No. 11 at 12–27, filed May 14, 2026.

predetermined phases of work from July 2024 to December 2024.[6] In exchange, Littlebird agreed to pay Mr. Atkinson $100 per month for his work.[7] The Consulting Agreement also states, "[w]e will recommend to the Company's Board of Directors at its next regularly scheduled meeting that Consultant be granted a non-qualified stock option to purchase 50,000 shares of Company's common stock at the then-current fair market value."[8] The stock options would vest according to a schedule set forth in the Consulting Agreement.[9]

In December 2025, Littlebird asked Mr. Atkinson to be its Chief Operating Officer.[10] On May 23, 2025, the parties entered into an Employment Agreement with terms that applied retroactively to begin on January 1, 2025.[11] The terms of the Employment Agreement are governed by the law of the state of Mr. Atkinson's residence during his employment, Utah.[12] Under the Employment Agreement, Mr. Atkinson was Littlebird's Chief Operating Officer.[13] His compensation consisted of a base salary of $1,000 per month that would increase to $16,666.67 after six months.[14] The Employment Agreement also includes an equity provision that states in part:

> Subject to approval by the Company's Board of Directors after your start date and your execution and delivery to the Company of a stock option agreement in connection therewith, you will be granted a stock option to purchase 610,000 shares of the Company's Common Stock, at an exercise price equal to the then-current fair market value of the Company's Common Stock on the date of grant.[15]

---

[6] *Id.* at 16.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 17.
[10] Amended Compl. ¶ 11.
[11] *Id.* ¶ 31; Employment Agreement 29, ECF No. 11 at 29–48, filed May 14, 2026.
[12] Employment Agreement 30.
[13] *Id.* at 29.
[14] *Id.*
[15] *Id.*

The Employment Agreement further provides that the stock options would vest on a "42-month vesting" schedule "with a 1/7 cliff after the first six months and then monthly thereafter, with a vesting start date of January 1, 2025."[16]

Despite signing these contracts, Defendant never sent the matter of Mr. Atkinson's stock options to the board for approval, and Mr. Atkinson never received the stock option agreement that he was required to sign.[17] Mr. Atkinson was never given the option to purchase the shares listed in the Consulting Agreement and the Employment Agreement.[18] Plaintiff further alleges that Littlebird and its CEO never intended to submit Mr. Atkinson's proposed stock options for board approval, set a strike price, or approve the shares.[19] Plaintiff's employment was later terminated.[20] In December 2025, in response to inquiries by Mr. Atkinson, Defendant told Mr. Atkinson that his shares "did not vest" and that he was not entitled to exercise any stock options.[21] Plaintiff asserts several causes of action based on the Consulting Agreement and the Employment Agreement.[22] Defendant now moves to dismiss some of the claims against it, including Plaintiff's claims for securities fraud, negligent misrepresentation, violation of the implied covenant of good faith and fair dealing, unjust enrichment, recission, and violations of the Utah Wage Claim Act.[23]

**STANDARD**

---

[16] *Id.*

[17] Amended Compl. ¶¶ 10, 16, 35.

[18] *Id.* ¶¶ 12, 17, 33.

[19] *Id.* ¶¶ 16, 23, 37.

[20] The exact date of Mr. Atkinson's termination is not clear from the Amended Complaint, which alternately asserts that he was terminated "[a]t the end of six months," "one week after signing," "a few weeks removed from signing" and sometime on or after June 30, 2025. *See* Amended Compl. ¶¶ 33, 37, 45, 60.

[21] Amended Compl. ¶ 14b.

[22] *See generally id.*

[23] *See* MTD.

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[26] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[27]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[28] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[29] Courts may also consider "documents that the complaint incorporates by reference,"[30] "documents attached as exhibits to the complaint,"[31] and "matters

---

[24] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).
[26] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[27] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).
[28] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).
[29] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).
[30] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).
[31] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

4

of which a court may take judicial notice,"[32] including "facts which are a matter of public record."[33]

## DISCUSSION

### I.        Negligent Misrepresentation (Counts II and VI)

Defendant first argues that Plaintiff's negligent misrepresentation claims relating to the Consulting Agreement and the Employment Agreement should be dismissed because (1) both claims describe intentional conduct rather than negligence, and (2) both claims are barred by the economic loss rule because they overlap entirely with Plaintiff's contractual claims.[34]

### A.        Consulting Agreement (Washington Law)

Regarding Defendant's arguments against Count II, Plaintiff responds by noting that the negligent misrepresentation claims are pled in the alternative to the intentional fraud claims.[35] He further argues that the negligent misrepresentation claim based on the Consulting Agreement is not barred by the economic loss rule because the Amended Complaint alleges violations of an independent duty to not make the misrepresentations that induced him to enter into the contract.[36] Littlebird then replies that Plaintiff characterizes the same facts as both intentional actions and negligence throughout the Amended Complaint and Opposition, which does not provide the basis for a plausible negligence claim.[37]

Under Washington law, a claim of negligent misrepresentation includes the following elements:

---

[32] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).
[33] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).
[34] MTD 6–7.
[35] Opposition to Motion to Dismiss ("Opp'n") 6, ECF No. 12, filed June 11, 2026.
[36] *Id*. at 7–8.
[37] Reply in Support of Motion to Dismiss ("Reply") 4, ECF No. 13, filed June 25, 2026.

(1) the defendant supplied information for the guidance of another in his or her business transactions, (2) the information was false, (3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.[38]

Littlebird argues that the Amended Complaint does not adequately allege the fourth element, that it was negligent in communicating the allegedly false representations, because Plaintiff repeatedly characterizes the misrepresentations as intentional.[39]

Count II in the Amended Complaint alleges that the CEO of Littlebird falsely told Mr. Atkinson that he would receive 50,000 shares of stock under the Consulting Agreement, which induced him to sign the agreement.[40] The Amended Complaint further alleges that this false information was communicated negligently because the CEO negligently failed to disclose that board approval was unlikely, negligently failed to disclose that the company had not set aside shares for the promised transaction, and negligently omitted that it had not yet drafted a governing equity plan.[41] These facts are sufficient to plausibly show that Littlebird was negligent in telling Mr. Atkinson that he would receive the shares despite its knowledge that various factors made such an arrangement unlikely.

As Defendant notes, the Amended Complaint also includes allegations that the misrepresentations were made with the intent to deceive Mr. Atkinson and that the CEO and board never intended to fulfill the promise.[42] However, these mixed allegations do not preclude

---

[38] *Repin v. State*, 198 Wash. App. 243, 278, 392 P.3d 1174, 1191 (2017) (citing *Ross v. Kirner*, 162 Wash. 2d 493, 499, 172 P.3d 701 (2007)).

[39] MTD 6.

[40] Amended Compl. ¶¶ 15, 19.

[41] *Id.* ¶ 16.

[42] *See id.* ¶¶ 15–20.

Plaintiff from asserting both intentional fraud claims and negligence claims in the alternative based on the same facts. Rule 8(d) of the Federal Rules of Civil Procedure expressly permits plaintiffs to state inconsistent claims or to make alternative statements of a claim.[43]

Defendant also argues that the economic loss rule bars Count II to the extent it alleges Littlebird was negligent in discharging contractual obligations.[44] However, Defendant clarifies in its Reply that it does not contend that the economic loss rule bars negligent misrepresentation claims based on pre-contract inducement.[45] Count II is based on negligence in pre-contract communications and inducement rather than negligence in carrying out the terms of the contract.[46] As Defendant now acknowledges, it is not barred by the economic loss rule.

### B.   Employment Agreement (Utah Law)

Defendant makes the same arguments against Plaintiff's misrepresentation claim with regard to the Employment Agreement.[47] As with Count II, Count VI is pled in the alternative to fraud.[48] It asserts that Littlebird's CEO represented to Mr. Atkinson that she was pleased with his work, that she wanted to make him a "full partner" in the business, and that he would have the chance to receive additional shares.[49] The Amended Complaint further asserts that Defendant was negligent in making these representations because the CEO failed to use reasonable care in determining whether the matter would be brought before the board and whether the company

---

[43] Fed. R. Civ. P. 8(d)(2), (3).

[44] MTD 6.

[45] Reply 4.

[46] Amended Compl. ¶ 19 ("Mr. Atkinson relied on the information in entering into the consulting agreement as that was the main incentive for him to enter into the agreement."); Opp'n 7 (representing that count 2 asserts a claim that "arose with what was communicated to Mr. Atkinson *to induce him to enter into the contract*") (emphasis in original).

[47] MTD 6–7.

[48] Amended Compl. ¶ 36.

[49] *Id.*

was in a position to approve the option provision.[50] These misrepresentations are alternatively pled as both negligent and intentional.[51]

In Utah, a claim for negligent misrepresentation requires the following elements, "(1) a party carelessly or negligently makes a false representation 'expecting the other party to rely and act thereon,' (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance."[52] "In addition to affirmative misstatements, an omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose."[53] Here, the facts alleged in the sixth cause of action are sufficient to plausibly state a claim for negligent misrepresentation. And for the same reasons already discussed, Rule 8 permits Plaintiff to plead alternative, contradictory theories regarding Defendant's mental state at this stage.[54]

Additionally, as with Count II, Defendant does not argue that Count VI is barred by the economic loss rule to the extent it is premised on pre-contract inducement.[55] However, unlike the Consulting Agreement negligent misrepresentation claim, it is unclear whether the Employment Agreement misrepresentation claim is based solely on pre-contract inducement. For example, Count VI alleges that Mr. Atkinson relied on the alleged misrepresentations "as part of the terms of his employment agreement"[56] and was damaged because he never had the chance to fulfill his

---

[50] *Id.* ¶ 37.

[51] *Id.*

[52] *Moore v. Smith*, 2007 UT App 101, 158 P.3d 562, 574 n.12 (quoting *Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919).

[53] *Id.* (cleaned up).

[54] The court notes that, while contradictory pleading is permitted under Rule 8, a defendant cannot be ultimately liable for both negligent misrepresentation and fraudulent misrepresentation because "the only difference between the two claims is a lesser mental state for negligent misrepresentation." *See id.*

[55] MTD 6; Reply 4.

[56] Amended Compl. ¶ 38.

part of the agreement and obtain the promised stocks.[57] This could be read as claiming that Plaintiff was harmed by Defendant's negligent failure to fulfill the terms of the contract.

In Utah, "[t]he economic loss rule is a judicially created doctrine that marks the fundamental boundary" between contracts and torts.[58] It requires that "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort" unless the claim is "based on a recognized independent duty of care."[59] In this case, any duty on the part of Defendant to provide Mr. Atkinson with stock options would arise solely from the contract, so the contract would control. Thus, the economic loss rule bars any claims that Defendant was negligent in performing the Employment Agreement. However, to the extent Count VI alleges that Defendant negligently induced Plaintiff to enter into the Employment Agreement, Littlebird has not challenged it under the economic loss rule.[60]

## II.    Breach of the Covenant of Good Faith and Fair Dealing (Counts IV and VIII)

Defendant next argues that Counts IV and VIII for breach of the implied covenant of good faith and fair dealing are not supported by any allegations that are distinct from the breach of contract claims based on the same agreements.[61] Littlebird further argues that the implied covenant cannot be used to transform conditions precedent into guaranteed obligations.[62] Plaintiff responds that, even if board approval was a condition precedent rather than a guaranteed

---

[57] *Id.* ¶ 39.
[58] *Reighard v. Yates*, 2012 UT 45, ¶ 19, 285 P.3d 1168, 1176.
[59] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶¶ 12, 15, 435 P.3d 193, 196–97 (quoting *Reighard*, 285 P.3d at 1176).
[60] Reply 4.
[61] MTD 7.
[62] *Id.* at 8.

obligation, Defendant still had a duty to make a good faith effort to consider the proposed stock options as a board.[63]

The implied covenant of good faith and fair dealing is similar under both Utah and Washington law. In Washington, "'[a]n implied duty of good faith and fair dealing inheres in every contract" which obligates the parties to cooperate and "to perform in good faith the obligations imposed by their agreement" so that each party "may obtain the full benefit of performance."[64] However, the implied covenant "does not obligate a party to accept any material changes to the terms of its contract" and "arises only in connection with terms agreed to by the parties."[65] Similarly, in Utah, under the implied covenant of good faith and fair dealing, "both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."[66] But courts will not interpret the implied covenant "to make a better contract for the parties than they made for themselves."[67]

In this case, Mr. Atkinson alleges that board approval was a necessary precondition to him receiving shares under both the Consulting Agreement[68] and the Employment Agreement.[69] He also alleges that, rather than seeking approval in good faith, Defendant never even put the stock options before the board and never intended to seek or grant approval.[70] Because the Amended Complaint includes facts suggesting that Defendant intentionally frustrated and

---

[63] Opp'n 11–14.

[64] *Feyen v. Spokane Tchrs. Credit Union*, 23 Wash. App. 2d 264, 276, 515 P.3d 996, 1003–04 (2022).

[65] *Est. of Carter v. Carden*, 11 Wash. App. 2d 573, 583–84, 455 P.3d 197, 202 (2019) (quoting *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569, 807 P.2d 356 (1991)).

[66] *Far W. Bank v. Robertson*, 2017 UT App 213, ¶ 29, 406 P.3d 1134, 1142 (quoting *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193).

[67] *Id.* (quoting *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998)).

[68] Amended Compl. ¶ 29; Consulting Agreement 16–17.

[69] Amended Compl. ¶¶ 51–52; Employment Agreement 29.

[70] Amended Compl. ¶¶ 10, 16, 23, 34.

impeded the fulfillment of the board approval condition,[71] it plausibly states a claim for breach of

the implied covenant of good faith and fair dealing. This is not to say that Defendant was

contractually obligated to approve the option provisions. Rather, the implied covenant requires

Defendant to refrain from actively impeding the fulfillment of a condition precedent and make a

good faith effort to allow the other party to obtain the full benefit of the contract. Plaintiff

plausibly pleads that Littlebird violated this implied covenant under both the Consulting

Agreement and the Employment Agreement.

### III.    Securities Fraud (Count IX)

Defendant next argues that Mr. Atkinson's claim under the Utah Securities Act fails as a

matter of law because Plaintiff does not state facts showing that he purchased securities from

Defendant.[72] The Amended Complaint asserts a cause of action under Utah Code §§ 61-1-1 and

61-1-21.5.[73] It alleges that Defendant offered securities to Mr. Atkinson while making untrue

statements that he would be able to purchase those securities.[74]

The Utah Securities Act states:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:
> (1) employ any device, scheme, or artifice to defraud;
> (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.[75]

---

[71] *See id.* ¶ 35.
[72] MTD 5.
[73] Amended Compl. 18.
[74] *Id.* ¶ 55.
[75] Utah Code Ann. § 61-1-1.

It also creates a private cause of action against a person who, among other things, "offers, sells, or purchases a security in violation of Subsection 61-1-1(2)."[76] Such a violator may be liable to the person to whom the security was sold, and the purchaser can sue to "recover the consideration paid for the security."[77] Section 61-1-21.5 only relates to the attorney general's authority to represent the Securities Division in certain legal matters and creates no private cause of action on which Mr. Atkinson could rely.[78]

Defendant argues that Mr. Atkinson has not alleged that he ever purchased a security and thus lacks standing to sue under the Utah Securities Act.[79] Plaintiff responds that he adequately alleges that Littlebird made an untrue statement of material fact in connection with the offer of a security as described in § 61-1-1(2) and that offering securities is expressly covered under the statute.[80] It is true that §§ 61-1-1(2) and 61-1-22(1)(a)(ii) make it a violation to offer securities in connection with an untrue statement of material fact. However, the private cause of action established by § 61-1-22(1)(b) is limited to "a person selling the security to or buying the security from" the violator.[81] Furthermore, damages under the statute are related to recovering consideration paid for the security.[82] Thus, "[p]otential purchasers or mere offerees do not have a cause of action under this section."[83]

In *Levitz v. Warrington*, the Utah Court of Appeals concluded that, "under the plain and unambiguous language of the Utah Uniform Securities Act, the seminal issue . . . is whether

---

[76] Utah Code Ann. § 61-1-22(1)(a)(ii).
[77] Utah Code Ann. § 61-1-22(1)(b).
[78] Utah Code Ann. § 61-1-21.5.
[79] MTD 5.
[80] Opp'n 4–6.
[81] Utah Code Ann. § 61-1-22(1)(b).
[82] *Id.*
[83] *Levitz v. Warrington*, 877 P.2d 1245, 1246 (Utah Ct. App. 1994).

12

[plaintiff] was an actual purchaser as opposed to a potential purchaser or mere offeree."[84] There, a plaintiff agreed to purchase stock under the condition that he found the defendant's facilities and operations adequate following an inspection.[85] The plaintiff transferred an advance deposit for the purchase to the defendant prior to his inspection.[86] Following his inspection, the plaintiff requested the return of his funds, but defendant withheld a substantial portion.[87] The court held that the plaintiff was not a purchaser with a cause of action under § 61-1-22(1) because the purchase was conditioned on plaintiff's approval, which never occurred.[88]

In this case, the Employment Agreement stock options were expressly conditioned on board approval and other preconditions.[89] The Amended Complaint never alleges that these conditions were satisfied. On the contrary, Plaintiff pleads facts showing that the option provision was never submitted for board approval,[90] that he was never given the opportunity to purchase the shares,[91] and that Defendant never intended to approve the stock option provisions.[92] Necessary preconditions to Plaintiff's purchase of the stock were not satisfied, and Plaintiff never purchased any securities from Defendant. Therefore, Littlebird cannot be liable to Mr. Atkinson for securities fraud under the plain language of § 61-1-22(b), and the Amended Complaint fails to state a claim for Securities Act violations.

---

[84] *Id.* at 1247.
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] Consulting Agreement 16; Employment Agreement 29.
[90] Amended Compl. ¶¶ 35, 41, 55b.
[91] *Id.* ¶ 33.
[92] *Id.* ¶¶ 37, 52.

## IV.    Unjust Enrichment (Count X)

The Amended Complaint also includes a cause of action for unjust enrichment under both the Consulting Agreement and the Employment Agreement.[93] Defendant argues that claims for unjust enrichment may not be maintained where an express contract governs the same subject matter.[94] Plaintiff responds that the unjust enrichment claim is proper because it is pled in the alternative to his contract claims and because he seeks recission of the agreements as a remedy under his fraud claims.[95]

Unjust enrichment is an equitable doctrine.[96] As such, under both Washington and Utah law, unjust enrichment is only available as a claim in the absence of an adequate remedy at law,[97] and "[a] party to a contract may not bring an unjust enrichment claim where there is an existing valid express contract."[98] However, as already discussed, Rule 8(d) of the Federal Rules of Civil Procedure permits alternative pleading.[99] Therefore, "a plaintiff is permitted to plead a breach of contract claim and an equitable claim in the alternative" as long as the complaint "sufficiently plead[s] facts to support each of the claims asserted."[100]

---

[93] Amended Compl. ¶¶ 57–59.

[94] MTD 8.

[95] Opp'n 14–15.

[96] *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wash. 2d 566, 574, 304 P.3d 472, 475 (2013); *Thatcher v. Lang*, 2020 UT App 38, ¶ 39, 462 P.3d 397, 406–07.

[97] *See Columbia State Bank v. Invicta L. Grp. PLLC*, 199 Wash. App. 306, 316, 402 P.3d 330, 336 (2017) ("The general rule is that courts will not exercise equity jurisdiction when there is a clear, adequate, complete, and speedy remedy at law."); *Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500, 507 (quoting *UTCO Assocs., Ltd. v. Zimmerman*, 2001 UT App 117, ¶ 19, 27 P.3d 177, *cert. denied*, 32 P.3d 249 (Utah 2001)) ("It is settled in Utah that 'the law will not imply an equitable remedy when there is an adequate remedy at law.'").

[98] *Highmore Fin. CO. I, LLC v. Equinox Bus. L. Grp. PLLC*, 37 Wash. App. 2d 1017 (2026) (unpublished); *see also U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 11, 270 P.3d 464, 468 ("[A] claim of unjust enrichment cannot arise where there is an express contract governing the subject matter of a dispute.").

[99] Fed. R. Civ. P. 8(d).

[100] *ClearOne, Inc. v. RSM US LLP*, No. 2:16-CV-00736-DN, 2017 WL 923949, at *10 (D. Utah Mar. 6, 2017).

The Amended Complaint does so here. Count X for unjust enrichment expressly states that it is pled in the alternative.[101] Plaintiff further alleges that the agreements lacked consideration and were illusory promises because they required board approval that was fully discretionary for Defendant.[102] Thus, the Amended Complaint adequately alleges in the alternative that no valid contract existed between the parties. Defendant replies that the contracts are not illusory because they are supported by consideration,[103] but this argument relates to the merits of Plaintiff's claims rather than the sufficiency of the Amended Complaint. Taking all of Plaintiff's allegations as true, even those that are facially inconsistent, the claim for unjust enrichment is not barred by allegations relating to the Agreements.

## V.     Utah Payment of Wages Act Violations (Count XII)

Next, Plaintiff claims that Defendant violated the Utah Payment of Wages Act ("UPWA") failing to permit him to exercise the stock options in the Employment Agreement.[104] The Amended Complaint asserts that the options vested and constitute unpaid earned wages under the Act.[105] Defendant argues that the stock option is not an earned wage owed under the act because it was never approved.[106]

Under Utah law, employers are required to, among other things, pay employees their earned wages at regular intervals and refrain from withholding employee wages.[107] "Wages" is defined to mean "the amounts due the employee for labor or services, whether the amount is

---

[101] Amended Compl. ¶ 57.
[102] *Id.*
[103] Reply 6.
[104] Amended Compl. ¶ 60.
[105] *Id.*
[106] MTD 8–9.
[107] *See* Utah Code Ann. § 34-28-3.

fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount."[108] Utah Code 1953 § 34-28-9.5 creates a private cause of action for employees to file a claim for unpaid wages and receive damages based on the amount of wages owed to the employee.[109] "The UPWA imposes liability for unpaid wages on all employers."[110] The plain language of the statute requires that some amount be owed to the employee for labor or services. The very definition of "wages" requires that some compensation actually be due to the employee.[111]

In this case, the Amended Complaint does not include facts from which it could be reasonably inferred that Mr. Atkinson was owed the stock option from the Employment Agreement. The Amended Complaint asserts that the option vested because Plaintiff performed six months of continuous employment.[112] However, the Employment Agreement lists preconditions to the stock option grant, including board approval and Plaintiff's execution and delivery of the stock option agreement.[113] The Amended Complaint clearly alleges that these conditions were never fulfilled and that Defendant never intended to seek or grant approval.[114]

Plaintiff contends that the statute must be read to include equity options as "wages."[115] This argument misses the point. The issue here is not whether the statute categorically excludes equity options as wages, but rather whether the facts pled in the Amended Complaint plausibly allege that the Employment Agreement equity provision was "due" or owed to Mr. Atkinson

---

[108] Utah Code Ann. § 34-28-2(1)(i).
[109] Utah Code Ann. § 34-28-9.5(2), (3).
[110] *Heaps v. Nuriche, LLC*, 2015 UT 26, ¶ 1, 345 P.3d 655, 656–57.
[111] Utah Code Ann. § 34-28-2(1)(i).
[112] Amended Compl. ¶ 60.
[113] Employment Agreement 29.
[114] Amended Compl. ¶ 55b.
[115] Opp'n 15–16.

such that it qualifies as wages. For the reasons stated above, it cannot be reasonably inferred from the Amended Complaint that the stock options were owed to Mr. Atkinson. The Amended Complaint fails to state a claim under the UPWA.

## VI.    Recission (Count XV)

Finally, Defendant argues that Plaintiff's claim for recission does not state an independent cause of action because recission is merely an equitable remedy.[116] Plaintiff does not contest this point and merely states that he pled recission as a "proper remedy in the complaint" with respect to the fraud in the inducement claims.[117] Accordingly, the court construes Plaintiff's claim for rescission as a request for a remedy in connection with the fraud claims rather than an independent cause of action.

## ORDER

Defendant's [11] Motion to Dismiss is GRANTED in part and DENIED in part. Claim IX for violations of the Utah Securities Act and Claim XII for violations of the UPWA are DISMISSED. Claim VI for misrepresentation is DISMISSED to the extent it alleges negligence in the performance of the Employment Agreement. Claim XV for recission is construed as a request for relief instead of an independent cause of action.

Signed August 4, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[116] MTD 9.
[117] Opp'n 16.